The Honorable, the Judges of the United States Court of Appeals for the Fourth Circuit Oyez, oyez, oyez, all persons having any manner or form of business before the Honorable, the United States Court of Appeals for the Fourth Circuit, are admonished to draw nigh and give their attention, for the Court is now sitting. God save the United States and this Honorable Court. Please be seated. I am prepared to hear argument in Deal v. City of Monroe. Mr. Cadill. May it please the Court. When you're ready. May it please the Court. My name is Beau Caudill and my co-counsel, Sophia Pappalardo, and I represent plaintiff appellant Ken Deal. This Court should reverse the judgment below and hold that the defendant, City of Monroe, violated Mr. Deal's due process rights when it removed him without cause, without notice, and without any opportunity to be heard from the City's Board of Adjustment prior to the expiration of his fixed statutory term. In concluding otherwise, the District Court held that because the City of Monroe had the statutory authority to abolish its Board of Adjustment, that Deal had no legitimate entitlement and therefore no property interest in either his term on the Board or his position on the Board, regardless of the fact that the City had never actually abolished its Board. And that's wrong. Section 160D-3. Why would you address the abolishment? Why aren't, it seems to me there's an explicit statute that says it's at will, right? No, there's no statute that says it's at will. There's an ordinance, 32-201A. There is an ordinance that the City of Monroe enacted, but North Carolina law is that if that ordinance is in violation or in contradiction to a state statute, that it is not effective. The state statute basically authorizes them to create the Board. They may or may not create it, and if they create it, they should have five members having three-year terms. If they create it, as long as... But then the City enacted an ordinance that said we are going to have a Board, five members with three-year terms, subject to at-will departure. So... That's what the ordinance said, right? That is what the ordinance said. Okay. And the question is, it's pretty clear when he took that job, he knew he was getting a three-year term that was subject to at-will dismissal. No, that's not clear. The City... What's the ordinance say? Tell me what the ordinance says. That is what the ordinance says. Well, then why isn't that clear? Because there is a state law that says that the City cannot enact that ordinance as a matter of North Carolina state law, and that is how the North Carolina Supreme Court... I thought the state law, you disagreed with me, was an authorization that authorized the City to create a Board with five members, with three-year terms. It didn't say impose any restrictions, it said basically five members, that's a restriction, and three-year terms, that's a restriction. But a three-year term doesn't mean that you can't put in provisions for how the term is fulfilled or whether you can release somebody. And just to put a little more substance on it, you cited a string of about ten cases in your brief, and virtually every one of them said that an at-term is presumed to require for cause unless otherwise specified. By the statute. No, well, these terms are created by the City. No, the City has no right... The state didn't create the terms, the state authorized the City. Your Honor, it begs the question whether the state statute authorized the City to vary those terms. That is the issue in this case, and that is what the North Carolina Supreme Court said in Board of Adjustment v. Town of Swansboro. The City was not free to do. What the North Carolina Supreme Court said is that this statute says that so long as you have a Board of Adjustment, they have to have three-year terms, and those terms cannot be reduced. You know, by creating all these property interests around, you have a property interest in this and a property interest in that and a property interest in some things that seem to me involved in politics, but the upshot of it is that we are moving government away from democratic accountability by creating these property interests in office holding of some sort or another, and I'm just not sure that that's a healthy trend because you create a property interest here and a property interest there, and you've got litigation over this removal and litigation over that termination and all the rest, and you are taking government away from the people who, in this case, it wasn't elected but was appointed by elected officials, but the overall trend just concerns me that to extend Laramiel to the point of having virtually civil service protections for individuals whose, the terms of who the employment has been clearly enunciated to them, but it just strikes me as an anti-democratic move. That's a problem. I realize this person wasn't elected, but it's clear what the terms of his employment were and it was clear what the authority that was vested in elected officials, and to sort of extend civil service protections across the board to this kind of situation is an anti-democratic move. That's the problem, isn't it? I think it could be a problem in some cases, but not this one, because I think that with respect to boards of adjustment specifically, the legislature would have a very good reason to put a level, a degree of separation between the board of adjustment and the democratic process, just as there's a degree of separation between the democratic process and the appointment of federal court judges, because the board of adjustment in North Carolina acts as a quasi-judicial board. If those members can be removed at political whim, then you are sort of defeating their potential neutrality in any case that comes before them. But you would agree that the Supreme Court in Swansboro, that there's this level of discretion. Basically, there they said, we're going to wipe out the whole board, and they said, that's fine. And so, it seems as if the way I read it, and also this court's precedent, if there's discretion, which it appears that there is, if there's discretion, then you don't have any entitlement to that seat, right? I would quibble with that a little bit. I agree that the question is about the degree of discretion. I do not think that the fact that they have some discretion means that the state law does not place meaningful limits on that discretion. So, in board of adjustment versus town of Swansboro, the North Carolina Supreme Court said that, yes, they have discretion to abolish the board of adjustment. But if they don't abolish the board of adjustment, then the members have three-year terms, and those terms cannot be reduced. And so, there is a limit on the discretion. Importantly, the city has said repeatedly in its briefing before this court that this is not true. This is important. Swansboro talks about this. In fact, if the city wanted to abolish the board, if it wanted to exercise its discretion to do that, it would have to publish notice, and it would have to have a legislative hearing, which Chapter 160D defines to mean a period of public comment. That is, it would have to give notice and an opportunity to be heard to the public. Maybe so, but that's really a matter of, at most, state law, and it's a decision that the North Carolina courts or the board of adjustments can make. But if the North Carolina, as I read the North Carolina case, and particularly the town of Swansboro case, if a municipality can abolish the board of adjustment altogether, that would seem to, the greater power would seem to subsume the lesser one about whether there was a termination in the middle of a term. And I just, in looking at the North Carolina cases like Mudd v. Ellington and the like, and it says, you know, the basic proposition here is that the sovereign owns public offices, not the occupant, and that's exactly what, that's exactly what I thought the town of Swansboro case was indicating. And for us to go, for us to go creating all of these property entitlements, we're charging right into the middle of North Carolina law. And I realize property entitlements under the Roth decision are created by state law, but there is still a federalism interest here. And not in view of the town of Swansboro, I don't know how we can go charging into the middle of North Carolina law and say, well, yeah, we understand you can eliminate the board of adjustment altogether, which would by definition eliminate people's terms in short of three years. And to tell North Carolina that they essentially can't do that or that there's a property interest involved here seems to me to begin to take over, to intrude upon North Carolina governance to a questionable extent. I'm just sort of, if they have the power to eliminate the board of adjustment altogether, why don't they have the power to curtail the terms? I mean, it would assume the greater power subsumes the lesser one. There's quite a bit to unpack there. I have three responses. I'm going to try to get through them quickly. The first is I don't think you're charging into North Carolina law. We're not writing on a blank slate here. You're not creating a property interest. We're not asking you to create one. The North Carolina Supreme Court in 1993 interpreted this language and said that you cannot reduce the terms of a member of a board of adjustment so long as that board is in existence. That is a paraphrase, but it is pretty close to the exact language that they used in the opinion. The second thing, the second point that I would like to make is with respect to this idea that the power to abolish the board means necessarily that we can't have any entitlement to the seat. If that is true, then we would also have to say that, for example, Congress's power to abolish the Federal Reserve means that no person on the Federal Reserve I really, with all respect to you, I don't think this has a whole lot of impact upon the Federal Reserve. Well, respectfully, I think that it's the same conceptualization. If Congress can abolish the Federal Reserve if it has that power, and it does, everyone would agree that it does. Well, that would be, I mean, we're talking about statutory, I mean, which is similar to what they said in Frank's case. The difference, I mean, I think they distinguish, North Carolina distinguishes Swansboro from Frank because they say these are statutory agencies. There's a statute. They talk Department of Social Services. What was the other one? It was the Department of Election. So that, which means these are statutory, so it takes, once again, away that discretionary. Here, it's the same thing. I mean, you have discretion. The board has discretion. The city has an ordinance, as Judge Nehemiah said earlier. I'm not sure this case lines up with Swansboro. They have discretion to do a certain thing, which would be to, through a public notice and comment period, decide to abolish the Board of Adjustment. They do not have discretion to have a Board of Adjustment and to appoint members to less than three-year terms. Let me ask you something. I'm wondering why we're having this debate as to whether the city ordinance is legal under the state law. Because when this man took his job, he took it with the ordinance in place. He took it for a three-year term, which would end his term, unless he were terminated at will during the term. He took it with that knowledge. Now, the question is, if that's the job he took, where did he get a property right? I mean, the ordinance was in place, and you're challenging the ordinance. But what he actually got, we're talking about whether he got a property interest. And he clearly took a job which had a three-year term subject to at-will termination. And he knew that when he took it. And I don't understand how he somehow got a property interest on a future argument that the ordinance somehow violated state law. So the flowchart would go like this. There's an ordinance. The ordinance says, you serve at the pleasure of the city council. But problematically for that ordinance, there is a state statute that has been... I know, but when he took the job, he took the job knowing the ordinance was there. The ordinance was in place. Whether it was legal or not, he didn't make a determination that that ordinance is illegal and I'm going to take the job. He took the job under the authorization of a city ordinance which provided at-will disposal. So the question is, when he took that job, whether the ordinance is legal or not, he took a much lesser interest than you're asserting. He took an interest in a three-year term subject to termination. So if I'm understanding the question correctly, it's almost like we're saying that his subjective belief about what the job entailed would dictate... No, no. It's what his property interest was. In other words, we're talking about... You're talking about a 14th Amendment taking of property, so to speak. And the question is, what did he get? And the ordinance was in place and he was appointed under the ordinance. He was not appointed under state law. He was appointed under the ordinance authorized by state law. And you can argue that the ordinance is illegal, but what he actually took was a job subject to termination. And he knew that. So now how did that circumstance, an appointment under that ordinance, give him a property interest? I think where we disagree, respectfully, is that I don't think he was appointed under that. The ordinance was illegal. That's the only authorization they had. The city had the authority to appoint him, and they appointed him under the ordinances. Your argument is that the ordinances are illegal now, but that doesn't affect what position he took. They were always illegal. And it would be like if I was testing someone. Say there was a city ordinance that said that I cannot insult a police officer, and then I insult the police officer. When I come before the court, the court's not going to say, well, at the time the ordinance was in effect and you insulted a police officer. The court's going to say that ordinance is a violation of your First Amendment rights. It is void and of no effect. And the same principle applies here. If the state law that authorized... Well, you're arguing that he clearly was appointed under the ordinance. But you're arguing he was appointed under an ordinance that partially had to be ignored. Yes, that's right. And so this is at the appointment stage. Even though at the appointment stage, the full authority that appointed him was the ordinance. That's right. Because we argue that that ordinance, by imposing a minimum term in office, requires a four-cause protection. And that's the principle we derive from the cases... Did he make an objection to the ordinance when he got appointed? No, Your Honor, but I don't think that that is... Again, I think if you... We're talking about whether he had a property interest. We're not talking about the legality of an ordinance when he's appointed. He was appointed under an ordinance that did not give him a property interest. But respectfully, we decide whether he has a property interest at all by reference to state law. And the state law was that the authorization of the city was to create a Board of Adjustment with individuals with minimum terms in office. And to give that any meaning at all. They can't be removable at the whim of the city council. All right, I think we've gone over there. Thank you very much. And you've reserved some rebuttal time. Thank you, Your Honor. Mr. Bader. Good morning and may it please the Court. Stephen Bader here on behalf of the City of Monroe. This Court should affirm summary judgment for the City of Monroe and decline council's invitation to extend constitutional tenure to members of a local discretionary board. One thing I just want to mention to opposing counsel. I realize that under the Roth decision that property interests are a matter of state law. But that doesn't eliminate all the interest in federalism that I see. Because that doesn't mean that, I mean, in some instances it's advisable when we're talking about creation of entitlements to state government. That some instances a certain level of deference is required and say, if these entitlements are going to be created, it's probably better for the North Carolina courts to do that. And he says Town of Swansboro already did that. I don't think so. But all I'm suggesting is that simply saying that entitlements are property interests are a matter of state law doesn't eliminate the interest in federalism that federal courts are going about creating entitlements right at the heart of state government. And that's, you know, there has to be a question. Is this the road we want federal courts traveling? To be creating entitlements to this and that and this right in the middle of state government. Judge Wilkinson, I agree with that. And I think that's, you know, Swansboro was not a constitutional case. But what the court did there is it said, here is what the North Carolina General Assembly has given our local governments the ability to do, the discretion to do. And then they made a determination as to how that comes about. And you're right, for the federal court to say, well, we're going to take that decision that didn't even deal with property interests and contort it in such a way as to find a property interest certainly does create some problems from a federalism standpoint and probably others. Judge Benjamin pointed to the Franks v. Savage case. And that case is a good example of how North Carolina state law can create a property interest in a local government position. But in that case, you had a social services board that, number one, was mandated by North Carolina state law. The statute says that a county shall create this board. Number two, it says that members of that board shall serve for three years. And number three, it said that the county cannot change the composition of that board once it is created. And so the North Carolina Court of Appeals, in reconciling that statutory structure, said, that creates an arguable property interest. And then in doing that, it distinguished those statutes from the Board of Adjustment statute discussed in Swansboro. And said, that is a permissive statute. It says that the county may create a board. It doesn't say that it shall. And the corollary to that is statutes that use the term shall arguably create that interest. While Swansboro, by distinction, does not. And the dicta in Swansboro that my friend refers to, really what it's talking about is the structure of how these boards are set up. They have to have at least a minimum of five members. And I would correct Judge Niemeyer just a little bit. This board actually has seven, but it's a minimum of five. And then there are three-year terms. But the very next sentence in the statute, 160D-302, actually gives the city greater discretion in appointing new members or members to fill terms to say, you can actually do it for less than three years. So that way, everybody's not coming off at the same time. But that is structural to the board. That does not create a property interest in an individual member that occupies a seat. If that was the intent of the North Carolina General Assembly, the statute would read very differently. It would use the term shall somewhere, and it doesn't use the term shall at all. It would mandate that members of this board must or shall fulfill their terms. It doesn't do that either. And it would put some kind of a framework in place for how cities or local governments could remove members of that board, similar to how they treat boards of social services, boards of election, other boards like that, that North Carolina General Assembly has elected to impose more restrictions on how they're formed and how they operate. That is just simply not true of boards of adjustment. Counselor, you've written a good brief, and I think we understand the arguments that you've made in your brief as well as the arguments that you've made before us. At this point, I'm going to ask if my good colleagues have additional questions for you. Otherwise, we've heard what we need to. We felt fine. Thank you very much. Thank you very much, Your Honor. All right. Mr. Cadell? Thank you, Your Honor. First, the language in Swansboro that I cite is not dicta. I think it is central to Swansboro's holding. The question in Swansboro was, what's the proper interpretation of 160D-302? And Swansboro says, this is the proper interpretation of 160D-302. You cannot remove a member, or you cannot reduce the term length of a member, so long as you have a board of adjustment in place. The statutory language at issue here does not allow for the variability for appointees other than in original appointments or replacement appointments. And that's significant. That language in 160D-302A. Because if it were true, as the city suggests, that they can essentially do whatever they want with their board of adjustment, it would be completely unnecessary to include that language. Also important is if you look to the very next statute, in that same article, 160D-303, the legislature in Appointments to the Historic Preservation Commission says that appointments shall be for a maximum term of four. Why should we be the ones to untangle all of this business? Why wouldn't the creation of entitlements within the heart of state government itself, or within the heart of local government itself, which would be subject to the authority of the state, why should we be the ones to create entitlements here and there at the heart of state government and at the heart of local government? I don't think you're right in the way you read the statute, but you may be. But if that question is going to be resolved, isn't there some value in allowing the creation of state employment entitlements to be made within the state itself? It's their government. We're not talking about classic property interest in terms of a four-acre lawn, or whatever it is. We're talking about employment, state employment entitlements at the heart of state and local government. And you've argued one way, and they've argued another, and it's a tangle. But why wouldn't the state courts, why wouldn't there be an interest in this sort of marginal situation of having the state courts look into it? So if you disagree with me about what Swansboro did in 1993, then I can understand the position that federal courts should not rush into it. But I don't think that there is any way to read Swansboro other than that Swansboro interpreted it. I see my time is up, may I briefly conclude? Thank you very much, sir. Okay, thank you very much, Your Honor. Your company and I agree, Counsel, moving to our next case.
judges: J. Harvie Wilkinson III, Paul V. Niemeyer, DeAndrea Gist Benjamin